310

## McLEMORE v. MAURY.
### No. 5833.

United States Court of Appeals for the District of Columbia.

Decided Nov. 26, 1934.

L. Q. C. Lamar and Aubrey B. Fennell, both of Washington, D. C., for appellant.

Ralph P. Barnard and William E. Richardson, both of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB, HITZ, and GRONER, Associate Justices.

MARTIN, Chief Justice.

This is an appeal from a final decree dismissing the appellant's bill of complaint.

The suit was brought in the lower court by the appellant as plaintiff to recover the sum of $10,000 from the defendants, John F. Maury and Otto B. McLean, upon a claim arising in a certain real-estate transaction in which the defendants were engaged. McLean was not served with process, and the cause proceeded against Maury alone.

The controlling facts in the case in so far as relevant to the present issue clearly appear from the testimony of the witnesses and the finding of fact by the trial justice. It appears that on December 10, 1926, one Harry A. Kite was the owner of certain premises known as 1514 K Street N. W., in the city of Washington, D. C.; that on that day Kite entered into a written contract with one Harvey L. Randall for the sale of the premises to him. The contract provided that the price of the property should be $93,205, of which $20,000 should be paid in cash.

It was provided that Randall should make full settlement thereof within 60 days after December 11, 1926. The settlement, however, was not actually made until February 28, 1927.

It appears that Randall acted in this transaction as the agent of John F. Maury, Otto B. McLean, and Frank E. Ghiselli, who were the real parties in interest; each of them purchasing an undivided one-third interest in the property. At the time of the transaction, Maury and McLean were the principal stockholders in a corporation known as Maury-McLean, Inc., which was engaged in the general real estate and insurance business in Washington, D. C., Maury being the president of the company and McLean the secretary, and that prior to the incorporation of this company Maury had been associated individually with McLean in one or two real estate deals. The third party in the real estate transaction, Ghiselli, apparently was not associated in business with Maury or McLean except in the purchase of this property.

Prior to the date of settlement, Julius I. Peyser became a fourth party in the purchase upon equal terms with the others, and each of the parties was to pay the sum of $5,000 in order to make up the cash payment of $20,000, as required by the contract. The Columbia Title Company of Washington was selected as the agency for the investigation of the title and the receipt of the purchase price, and for the transfer of the property upon the completion of the details of the transaction. On February 16, 1927, Peyser paid to McLean the sum of $5,000 as Peyser's share of the cash payment of $20,000, and on or about the same date Ghiselli paid McLean an equal sum as his share of the cash payment. These funds were intended to be paid by McLean to the title company as part of the cash payment, and the payment of the amounts to McLean for this purpose was made with the knowledge and consent of the defendant Maury. On February 23, 1927, Maury and McLean borrowed the sum of $10,000 from a local bank, and caused the same to be paid directly to the Columbia Title Company as the amount due from them toward the cash payment aforesaid. It then became the duty of McLean to pay to the title company the sum of $10,000 which he had received from Peyser and Ghiselli for that purpose. McLean thereupon issued his own check to the company drawn upon a local bank for the sum of $7,734.27. The check, however, was dis-

honored and was never paid. Thereupon McLean approached the plaintiff, Mrs. McLemore, and falsely and fraudulently stated to her that she could have a one-fourth interest in the purchase of the premises upon payment by her of the sum of $10,000, and on the same day Mrs. McLemore, relying upon these assurances, withdrew the sum of $10,000 from W. B. Hibbs & Co., bankers, by means of two checks drawn by her payable to her order as suggested by McLean, one in the sum of $7,800 and the other in the sum of $2,200. She indorsed the check for $7,800 to the Columbia Title Company, and immediately went with the check to the title company's office together with McLean, Harvey L. Randall, Ralph Benton, and Martin J. Quigley, the last three being employees of Maury-McLean, Inc., and caused the check to be deposited with the title company as part payment for the property.

The representations and dealings of McLean with the plaintiff were wholly false and fraudulent; it was not intended by McLean that Mrs. McLemore should acquire any interest in the real estate for her money, nor did she acquire any such interest. Her money was fraudulently converted by McLean to his own personal use. However, Maury, Peyser, and Ghiselli had no knowledge of the fraud nor participation in it. The check for $2,200 was not given to the title company by McLean, but was indorsed and delivered to Maury, who credited McLean with the amount thereof upon an indebtedness due to Maury from McLean. On February 28, 1927, after the $7,800 had been paid into the title company in the manner stated and the transaction had been closed, Mrs. McLemore stated to McLean that "she wanted something to show for her interest in the deal," and thereupon McLean fraudulently gave her a note signed by himself dated February 28, 1927, payable to her order on demand in the sum of $10,000, which note has never been paid, and is entirely in default. Afterwards McLean conveyed his interest in the property to Maury in part payment of an indebtedness due to Maury from McLean. Maury thus became the owner of one-half interest in the property, and by a subsequent transaction between him and Peyser, which is not relevant to the present case, he became the owner of Peyser's interest, thereby becoming the owner of a three-fourths interest in the property. The property was subsequently sold in March, 1928, at a considerable profit as compared with its purchase price.

The present case was brought by Mrs. McLemore to recover from Maury and McLean the sum of $10,000 because of the money procured from her by McLean as above set out. The court held against her claim upon the ground that it was McLean (who was not served with process in the case) who had defrauded her, and that no actual knowledge, notice, or information of the fraud was brought to the attention of defendant Maury, and therefore he was not liable. The plaintiff's bill accordingly was dismissed.

We agree with the opinion of the trial justice. The fraud which McLean practiced upon Mrs. McLemore was done without the knowledge of Maury and not in furtherance of the real estate transaction in which Maury and McLemore were engaged. Maury had fully paid the amount which was due from him for the cash payment upon the property, and so had McLean. These payments had been made directly by the bank from which they borrowed the money to the title company. Consequently both Maury and McLean had fully discharged their part of the cash payment of $20,000 due upon the property. McLean, however, had received from Peyser and Ghiselli the sum of $10,000 which was their part of the $20,000 cash payment, and McLean had used the money otherwise and found himself unable to pay this amount to the title company. He therefore practiced a fraud upon Mrs. McLemore for the purpose of securing for himself the $10,000, not for the purpose of paying Maury's share or his own share of the cash payment, but for the purpose of restoring the amount which Peyser and Ghiselli had intrusted to McLean as their agent to pay to the title company, and which McLean had converted to other uses. We think that the wrong thus perpetrated by McLean, without the knowledge or participation of Maury, and not for the purpose of benefiting Maury, but for the purpose only of restoring the money which McLean had received from Peyser and Ghiselli, cannot be attributed to Maury either directly or by implication. Maury did not authorize McLean to commit the fraud, nor was Maury liable for McLean's action taken without Maury's knowledge or consent.

We are compelled to join in the statement of the trial justice concerning Mrs. McLemore that "this is an unfortunate case for the plaintiff. She has been very unjustly dealt with in this case. It is very unfortunate that the person who is responsible to her is not before the court and cannot be made responsible for his wrong."

Therefore, consistently with the opinion of the trial court, we affirm the decree below with costs.

GRONER, Associate Justice (dissenting).

The opinion of the court in this case concedes that Mrs. McLemore (appellant) was the victim of an unconscionable swindle, but exonerates Maury (appellee) from any participation in the swindle and from any responsibility for its consequences. McLean, who is said to have conducted the swindle and then to have fled the jurisdiction, is held not to have been a partner of Maury, and in this conclusion I dissent.

The evidence abundantly shows that Maury and McLean were associated in the real estate business, having joint offices and jointly participating in the conduct of the business. This joint relationship developed later into a corporation called "Maury-McLean, Inc.," though precisely when does not appear, but apparently it was in existence during the whole or a part of the period covered by the transaction out of which the controversy arose. Maury had 40 per cent. of the stock and McLean 40 per cent., and the employees of their office the balance.

The transaction in which Mrs. McLemore was victimized involved the purchase of a piece of property on K street in Washington City, afterwards sold at a profit to a subsidiary of the Southern Railway. An option on this property had been obtained, apparently by McLean, and its terms provided for an initial payment of $20,000. Maury and McLean jointly, but not for the corporation, invited Ghiselli and Peyser to join them in the purchase; the arrangement being that each would contribute five thousand of the twenty thousand dollars initial payment.

McLean collected from Ghiselli and Peyser, but apparently converted their contribution of $10,000 to his own use. He then procured Mrs. McLemore to contribute $10,000 on a promise of a one-fourth interest in the property, and it was her money, together with $10,000 borrowed by Maury and McLean from a bank, which enabled the deal to be carried through.

Mrs. McLemore knew both Maury and McLean as associates in the real estate business. Peyser, another of the adventurers, likewise knew McLean and Maury as partners. Ghiselli, the other, testified that he knew them as associated in the real estate business. When the property was sold after a period of approximately a year, Maury took McLean's share of the proceeds of the sale in payment of a personal debt from McLean to him. I cannot read the record in this case without being convinced that Maury and McLean acted together as partners in promoting the purchase and ultimate sale of the property. The other participants in the purchase, except Mrs. McLemore, talked the matter over with both Maury and McLean before making their respective contributions, and thereafter with the one of them who happened then to be available, and I think it is perfectly clear that both understood that Maury and McLean were jointly promoting the deal, and that in all that concerned it either one of them spoke for the other. As between themselves and the other participants in the adventure, they were understood to be, and in fact were, partners, and were jointly bound by such representations as either might make in the common enterprise. In this state of facts, Mrs. McLemore was in my opinion entitled to an accounting, and therefore the dismissal of her bill by the lower court was error, and should be reversed.